1

2

3

4

5

6              UNITED STATES DISTRICT COURT

7              EASTERN DISTRICT OF WASHINGTON

8

9    BEVERLY HARRIS,                    No. 2:15-CV-0254-JTR

10                Plaintiff,
                                        ORDER GRANTING
11                v.                    DEFENDANT'S MOTION FOR
                                        SUMMARY JUDGMENT
12

13    CAROLYN W. COLVIN,
      Commissioner of Social Security,
14

15                Defendant.

16

17         **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18    No. 15, 16.  Attorney Christopher H. Dellert represents Beverly Harris (Plaintiff);

19    Special Assistant United States Attorney Leisa A. Wolf represents the

20    Commissioner of Social Security (Defendant).  The parties have consented to

21    proceed before a magistrate judge.  ECF No. 5.  After reviewing the administrative

22    record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for

23    Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

24                          **JURISDICTION**

25         Plaintiff filed an application for Supplemental Security Income (SSI) in

26    November 2012, alleging disability since January 1, 2007, due to rheumatoid

27    arthritis, bipolar disorder, PTSD, acid reflux, anxiety, high blood pressure,

28    insomnia, depression, carpal tunnel syndrome and wrist surgery.  Tr. 214-220, 240-

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

241.  Plaintiff later amended her onset date to the protective filing date of her application for SSI, November 8, 2012.  Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Elizabeth Watson held a hearing on April 24, 2014, Tr. 41-83, and issued an unfavorable decision on June 19, 2014, Tr. 18-30.  The Appeals Council denied review on July 31, 2015.  Tr. 1-6.  The ALJ's June 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on September 22, 2015.  ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on August 29, 1967, and was 45 years old on the alleged disability onset date, November 8, 2012.  Tr. 214.  Plaintiff completed high school and later completed vocational training as a certified nursing assistant, in an electrician program, and in cosmetology/instructor.  Tr. 55.  Plaintiff has past relevant work as a hair stylist and an office manager of a hair salon.  Tr. 56.  She indicated she stopped working in 2007 because of her condition.  Tr. 241.

At the administrative hearing, the ALJ asked vocational expert Carly Coughlin a hypothetical which set forth the ALJ's RFC determination, including the limitations on standing/walking for a total of about two hours in an eight-hour workday with normal breaks and the need for a sit/stand option.  Tr. 76-77.  The vocational expert opined that such a person could perform the jobs of office helper, electronics' assembler and laundry sorter.  Tr. 77.  The vocational expert explained that although light work is defined as standing/walking for the majority of the day, there are some light-exertion level jobs, like office helper, laundry sorter and electronics' assembler, which are performed in the seated position for the majority

of the time.  Tr. 78.  The vocational expert indicated she provided jobs in the light

category of physical demand that could be performed sitting or standing.  Tr. 78.

The vocational expert further clarified that the jobs of electronics assembler, office

helper and laundry sorter could be performed by one who is able to stand/walk a

maximum of two hours a day.  Tr. 79.

With respect to the sit/stand option provided in the hypothetical by the ALJ,

the vocational expert specifically indicated the Dictionary of Occupational Titles

(DOT) did not address that area; therefore, she supplemented her testimony with

her 14 years of experience and her education in vocational rehabilitation to find

that the hypothetical individual could perform the light-exertion level jobs she

identified.  Tr. 80.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*,

although deference is owed to a reasonable construction of the applicable statutes.

*McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ

may be reversed only if it is not supported by substantial evidence or if it is based

on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

evidence is defined as being more than a mere scintilla, but less than a

preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to

more than one rational interpretation, the court may not substitute its judgment for

that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec.

Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by

substantial evidence will be set aside if the proper legal standards were not applied

in weighing the evidence and making the decision.  *Brawner v. Secretary of Health*

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

*and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since November 8, 2012, the alleged onset date.  Tr. 20.  At step two, the ALJ determined Plaintiff had the following severe impairments:  degenerative disc disease – cervical and thoracic spine; bilateral knee osteoarthritis; depressive disorder NOS; bipolar disorder NOS; anxiety disorder NOS; and status-post traumatic brain injury.  TR. 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

the listed impairments.  Tr. 22.  The ALJ assessed Plaintiff's RFC and determined she could perform a restricted range of light exertion level work.  Tr. 24-25.  The ALJ found Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk no more than two hours with no sitting limits in an eight-hour day; must be allowed to alternate sitting or standing positions as needed throughout the day while remaining on task; can occasionally climb ramps or stairs; must never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold and extreme heat; must avoid concentrated exposure to excessive noise; must avoid concentrated exposure to operational control of moving machinery and hazardous machinery; must have no exposure to unprotected heights; can understand and carry out simple instructions; and is limited to occasional, superficial contact with the public, coworkers and supervisors.  Tr. 24-25.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a cosmetologist and salon manager.  Tr. 29.  However, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of laundry sorter, electronic equipment assembler and office helper.  Tr. 29-30.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 8, 2012, the alleged onset date, through the date of the ALJ's decision, June 19, 2014.  Tr. 30.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to provide clear and convincing reasons supported by substantial evidence for finding Plaintiff was not

fully credible; and (2) failing to explain the basis for her conclusion at step five that Plaintiff was capable of performing the jobs of laundry sorter, electrical equipment assembler and office helper despite the assessed restrictions on standing/walking and the need to alternate sitting or standing.

## DISCUSSION

**A.    Plaintiff's Credibility**

Plaintiff first contends the ALJ erred by failing to provide valid reasons for finding Plaintiff not fully credible in this case.  ECF No. 15 at 4-12.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v.* Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible.  Tr. 25.

The ALJ determined the objective medical evidence of record did not fully support the level of limitation claimed by Plaintiff.  Tr. 26.  A lack of supporting objective medical evidence is a factor which may be considered in evaluating an

individual's credibility, provided it is not the sole factor.  *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

As noted by the ALJ, Plaintiff testified to a number of physical symptoms and limitations at the hearing, Tr. 58-75, many of which she had never mentioned to care providers and, thus, there was a lack of objective medical evidence concerning these alleged symptoms and limitations.  Tr. 26.  Moreover, despite various physical impairments and symptoms noted in the evidence of record, Arthur Rodriguez, M.D., and Frederick Comrie, a rehabilitation specialist, examined Plaintiff in October 2012 and found no atrophy, fasiculations (involuntary muscle contraction), or gross deformity in the cervical spine, Tr. 316; Plaintiff displayed 5/5 strength, intact sensation to light touch and pinprick in the left upper extremity, and symmetric deep tendon reflexes, Tr. 316; Plaintiff's cervical x-rays from May 2011 revealed osteophyte formation at all levels but no uncovertebral or facet osteoarthritis, Tr. 316; Dr. Huisinga's November 2012 examination revealed 5/5 strength in the lower extremities, intact sensation to light touch, full knee extension bilaterally, no laxity with stress maneuvers, and no effusions, redness, or warmth of either knee joint, Tr. 343; therapists noted Plaintiff was improving and able to do more at home, Tr. 581; and, in February 2014, Dr. Hirshmann indicated Plaintiff had 5/5 strength in her lower extremities, intact sensation, full bilateral extension, and no effusions, redness, or warmth of either joint, Tr. 722.  Tr. 26-27.

The ALJ also indicated the objective evidence of record did not support the level of limitation Plaintiff claimed with respect to her alleged mental impairments

1   and their corresponding symptoms.  Tr. 28.  The ALJ noted the record reflects

2   Plaintiff reported her mood was "pretty good" and her energy level was fine in

3   October 2012, Tr. 358; her mood was pretty good and her sleep, appetite, energy

4   and concentration were stable in November 2012, Tr. 347; clonazepam was very

5   helpful when she felt overwhelmed, Tr. 347; she was doing pretty good even with

6   additional stressors in January 2013, Tr. 431; she was doing well overall and

7   continued to juggle multiple responsibilities with her family in August 2013, Tr.

8   759; and, in November 2013, she continued to use clonazepam for anxiety, but

9   only sparingly, and remained active with her children and home activities, Tr. 741-

10  742.  Tr. 28.

11          As indicated by the ALJ, the evidence of record does not support the

12  symptoms and limitations alleged by Plaintiff in this case.  It was thus appropriate

13  for the ALJ to conclude Plaintiff's was not entirely credible because Plaintiff's

14  alleged level of limitation was not consistent with the medical evidence.

15          The ALJ also mentioned Dr. Rodriguez and Mr. Comrie recommended only

16  conservative treatment for Plaintiff's allegations of symptoms and pain.  Tr. 26.

17  Evidence of "conservative treatment" is sufficient to discount a claimant's

18  testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742,

19  751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)

20  (conservative treatment suggests a lower level of both pain and functional

21  limitation).

22          Dr. Rodriguez and Mr. Comrie recommended exercise therapy and proper

23  pillow support.  Tr. 26, 317.  Dr. Huisinga administered bilateral cortisone and

24  Synvisc injections, Tr. 342, which Plaintiff reported "really helped," Tr. 426.  Tr.

25  26-27.  The record also reflects Plaintiff underwent several physical therapy

26  sessions which seemed to help.  Tr. 27.  These methods of treatment are considered

27  conservative.  *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)

28  (describing "physical therapy" as conservative treatment); *Gallo v. Comm'r of Soc.*

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

*Sec. Admin.*, 2010 WL 545848 at *14 (N.D. Cal. 2010) aff'd, 449 F. App'x 648 (9th Cir. 2011) (defining an epidural steroid injection as conservative treatment); *Morris v. Colvin*, 2014 WL 2547599 at *4 (C.D. Cal. 2014) (finding the ALJ properly discounted credibility when plaintiff received conservative treatment consisting of physical therapy, use of TENS unit, chiropractic treatment, Vicodin, and Tylenol with Vicodin). The ALJ's statement that Plaintiff had been recommended only conservative treatment provides another clear and convincing reason for discounting Plaintiff's testimony in this case.

The ALJ also stated that Plaintiff's activities were inconsistent with her assertion of disability. Tr. 26-27. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated records from December 2012 state Plaintiff chopped wood "regularly" and had sustained a hand injury in June 2012 when her hand was caught between her splitting maul and a truck's tailgate. Tr. 26, 286. The ALJ further noted a July 2013 report revealed she was on her feet "all day" cutting hair. Tr. 27, 761. This level of activity is not consistent with Plaintiff's claim of disabling limitations.

The ALJ additionally indicated the record reflected Plaintiff continued to provide salon services as she had in the past after her alleged onset date. Tr. 27, 761. Employment after the alleged onset of disability date may be a factor in an ALJ's credibility determination. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009) (finding that "[t]he ALJ made specific findings in support of his decision to discount [plaintiff's] testimony," including that plaintiff "recently worked as a personal caregiver for two years [after her disability onset date], and has sought out other employment since then"). The fact that the record reflects Plaintiff continued to provide salon services after her alleged onset date, as documented by the ALJ, is a valid reason for the ALJ to discount Plaintiff's assertion of disabling symptoms.

Finally, the ALJ stated Plaintiff had not taken the recommended anti-inflammatory medication on a regular basis, suggesting her symptoms were not particularly problematic.  Tr. 27, 761.  In assessing a claimant's credibility, an ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'"  *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d at 1284).  A claimant's statements may be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p.  The ALJ did not err by relying, in part, upon Plaintiff's failure to comply with medical recommendations in concluding Plaintiff was not fully credibility in this case.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review.  42 U.S.C. § 405(g).  After reviewing the record, the Court finds that the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are clear, convincing, and fully supported by the record.  Accordingly, the ALJ did not err by finding Plaintiff's allegations were not entirely credible.

**B.    Step Five**

Plaintiff next asserts the ALJ erred at step five of the sequential evaluation process by determining Plaintiff's RFC was consistent with the ability to perform the jobs of laundry sorter, electronic equipment assembler and office helper.  ECF No. 15 at 12-16.

If Plaintiff has established a prima facie case of disability by demonstrating she cannot return to her former employment, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that Plaintiff can perform despite her identified limitations. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work."). The ALJ can satisfy this burden by either (1) applying the grids, or (2) considering the testimony of a vocational expert. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

The ALJ's RFC determination is not specifically challenged by Plaintiff in this case. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief." (citations omitted)); *Carmickle*, 533 F.3d at 1161 n.2 ("issues not argued with specificity in briefing will not be addressed"). Accordingly, the ALJ's uncontested RFC determination, that Plaintiff is capable of performing light exertion level work with additional exertional and nonexertional limitations, including the restriction of standing and/or walking no more than two hours in an eight-hour day and the need to be allowed to alternate sitting or standing, is not at issue.

Given a hypothetical which included all the limitations assessed in the ALJ's RFC determination, vocational expert Carly Coughlin testified that such a person could perform the jobs of office helper, electronics' assembler and laundry sorter. Tr. 77. The vocational expert specifically stated that these light exertion level jobs could be performed by one who is able to stand/walk a maximum of only two hours a day. Tr. 79. With respect to the sit/stand option provided in the hypothetical by the ALJ, the vocational expert specifically indicated her opinion, which concluded that the hypothetical individual would be able to perform the jobs of office helper, electronics' assembler and laundry sorter, was based on her education and experience. Tr. 80.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

1    Plaintiff argues the DOT's descriptions of the jobs identified by the

2    vocational expert are inconsistent with the level of Plaintiff's functioning as

3    determined by the ALJ.  Because the DOT states that the jobs of laundry sorter,

4    electrical equipment manager, and office helper could require "walking or standing

5    to a significant degree," the Court agrees there is an apparent conflict between the

6    vocational expert's testimony and the DOT requirements with respect to these light

7    exertion level jobs.

8        The Commissioner will take administrative notice of job information in the

9    DOT, but may also rely on information provided by a vocational expert; neither

10   source automatically trumps the other.  20 C.F.R. § 416.966(d); SSR 00-4p; *Barker*

11   *v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (The DOT "is not the sole source of

12   admissible information concerning jobs"); *Whitehouse v. Sullivan*, 949 F.2d 1005,

13   1007 (8th Cir. 1991) ("The Secretary may take administrative notice of any reliable

14   job information, including . . . the services of a vocational expert." (internal

15   quotation marks and citations omitted)).  The DOT itself states that it is not

16   comprehensive, but provides only occupational information on jobs as they have

17   been found to occur, but they may not coincide in every respect with the content of

18   jobs as performed in particular establishments or at certain localities.  *Johnson v.*

19   *Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that an ALJ may rely on

20   vocational expert testimony that contradicts the DOT when the record contains

21   persuasive evidence to support the deviation).  When there is a conflict between

22   the DOT and a vocational expert's testimony, the ALJ may rely on the vocational

23   expert's testimony when he provides a reasonable explanation of the conflict based

24   on his experience.  *Johnson*, 60 F.3d at 1435.

25       Here, the ALJ specifically addressed the contradiction between the DOT and

26   the vocational expert testimony.  Tr. 30.  The ALJ indicated the vocational expert's

27   testimony concerning Plaintiff's ability to perform the three jobs, despite the

28   limitation on standing, was based on the vocational expert's vocational experience.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

Tr. 30.  At the administrative hearing, the vocational expert explained that, based on her education and experience, there are some light exertion level jobs, like office helper, laundry sorter and electronics' assembler, which are performed in the seated position for the majority of the time.  Tr. 78-79.  Therefore, the identified jobs could be performed by one who is able to stand/walk a maximum of only two hours a day.  Tr. 78-79.

With respect to the sit/stand option provided in the ALJ's RFC determination, there is no conflict between the vocational expert's testimony and the DOT.  *See Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 628 (9th Cir. 2011) (stating the DOT is silent regarding sit/stand options).  Nevertheless, the need for a sit/stand option was specifically addressed by the vocational expert.  The vocational expert indicated her testimony that the identified jobs could be performed by the hypothetical individual, despite the need for a sit/stand option, was based on her 14 years of experience as a Voc-Rehab counselor and her education (Master's degree in vocational rehabilitation).  Tr. 80.  The ALJ properly relied upon the vocational expert's testimony in this regard.

Based on the foregoing, substantial evidence supports the ALJ's conclusion that Plaintiff could perform the jobs identified by the vocational expert.  The ALJ did not err at step five of the sequential evaluation process by relying on the testimony of the vocational expert to conclude Plaintiff could perform the jobs of office helper, electronics' assembler and laundry sorter, jobs which exist in significant numbers in the national economy.  Tr. 30.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error.  Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

1      2.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2      The District Court Executive is directed to file this Order and provide a copy

3  to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant**

4  and the file shall be **CLOSED**.

5      DATED May 20, 2016.

6

7       _____

8               JOHN T. RODGERS
        UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION . . . - 14